# GRAFTON.

## DECEMBER TERM, A. D. 1848.

---

### LATON v. KING.

A. having agreed to labor for B. for a stipulated term, at a certain price, became sick during the term and unable to do any work, and requested B. to release him from further laboring for him. This B. consented to, on condition that A. should remain unable to work. A. recovered so far as to be able to do some work, but not so much as the contract required him to do. *Held*, that he was released from the contract, and the offer of A. afterwards to accept such partial performance in lieu of the whole, did not restore the original contract, nor impose upon A. the duty of resuming work under it.

ASSUMPSIT. The case was referred to an auditor, who reported, in substance, that on the 9th of April, A. D. 1846, the plaintiff, Marshall Laton, was a minor of the age of eighteen years. His father had previously deceased, and his mother resided in the State of New York. On that day, said Minor made several contracts with the defendant and one Jesse Eastman, to labor for them at farming, at Landaff, for the term of six months, at ten dollars per month, one half the time for Eastman and the other half for the defendant, one week at a time for each, and so alternately until the expiration of said six months.

Under these contracts, the plaintiff commenced work for the defendant and Eastman, laboring alternately, one week at a time for each, until he had labored for the defendant the time charged in his account, when the plaintiff became so unwell as to be unable to work for the space of three

weeks. At the expiration of the three weeks, his health so far improved that he was able to do some work, and he did labor; but his health was such that he could not perform the amount of labor that his contract would require, nor what would reasonably have been expected of him at the time of making the contract. He, however, contrived to labor for Eastman till the expiration of the six months, doing about two-thirds the amount of labor his contract would require, which was all he was well able to perform. During the three weeks in which he was unable to do any labor, he applied to the defendant to be released from further laboring for him, assigning as a reason his poor health, and informing him he wished to go to New York; and the defendant consented that, in case the plaintiff should remain unable to work, he might be released, and to pay him, for the time he had labored, his stipulated wages. But instead of going to New York, the plaintiff continued to work for Eastman, as above stated, and the defendant, finding the plaintiff still at work for Eastman, applied to him to work for him, as he had done, but the plaintiff declined, assigning as a reason his poor health, and that it was too hard for him to work for two persons. Whereupon the defendant informed him that if he would work for him he would not require of him to work harder or do more than he was doing for Eastman, and would pay him his stipulated wages, but the plaintiff declined.

The failure of the plaintiff to labor for the defendant, as he required under the contract, was a damage to the defendant fully equal to the balance claimed by the plaintiff.

*S. H. Goodall*, for the plaintiff.

1. The sickness of the plaintiff dissolved the contract.

2. When the act of God dissolves the contract, no damages can be recovered for the non-performance of it. 4 Pick. 102; 7 Mass. Rep. 238; 1 Pick. 284; 13 Mass. Rep. 93;

---

---

20 Maine Rep. 453; Comyn's Dig. Cond. L. 12; 1 Salkeld 198.

3.   If no damages can be recovered, none can be recouped against the action for wages.   The question is, what were the plaintiff's services worth to the defendant.

*Hibbard,* for the defendant.

An infant cannot recover at all after avoiding his contract.   8 Cow. 84; 7 Cow. 184; 5 Cow. 343.

The sickness excuses the plaintiff only to the extent of the disability.   He was bound to do all he could, especially when the defendant offered to accept such partial peformance for full performance.   *Baylies* v. *Fettyplace,* 7 Mass. Rep. 325.   The contract was superseded while the sickness continued—was not annulled.

WOODS, J.   The report of the auditor contains no suggestion of fraud or imposition, on the part of the defendant, in making with the plaintiff the contract for labor.   And it is not open to doubt that, if without fault of the defendant, and without his consent, the plaintiff saw fit to leave the service of his employer before his term of service had expired, he was, nevertheless, entitled to recover a *quantum meruit* for the services performed.   If an adult be thus entitled to recover, as was decided in the case of *Britton* v. *Turner,* 6 N. H. Rep. 481, it would be difficult to find a sound reason why an infant might not recover in a like case.   Indeed, the case of *Moses* v. *Stevens,* 2 Pick. Rep. 332, is expressly in point to sustain this view.   We are aware that it was otherwise decided in the case of an infant, in *Weeks* v. *Leighton,* 5 N. H. Rep. 343, in which case it was said that the general rule is that a party cannot recover in such a case, and that the circumstance that the plaintiff was an infant when he entered into the contract, did not make the case an exception.   But we do not accede to the doctrine of that case, in the terms in which it is laid

down. In the case of *Moses* v. *Stevens*, already cited from 2 Pick., it was holden that if the employer was injured by the sudden termination of the contract, or by the infant's leaving his service without just cause, before the completion of his term, a deduction might be made on that account. This is exactly in accordance with the doctrine of *Britton* v. *Turner*, as applied to the case of an adult.

While we would adhere to the doctrine of *Britton* v. *Turner*, and feel bound by a stronger reason to apply the principles of that case to a case in which an infant is the party, we are not inclined, even in favor of such a party, to extend the doctrine. It is enough if the infant, in violation and disregard of his fair agreement to labor for a specified term, be allowed to leave the service of his employer before its expiration, without just cause, and after its expiration, upon notice and demand of payment, to recover of him what the labor has been worth to him, within the limits of the contract, after deducting the damages sustained by such violation of the contract.

From this view of the case, it becomes important to ascertain from the report whether the plaintiff left the service of the defendant by agreement, and according to agreement, or not. For if not, the auditor having found that the failure of the plaintiff to perform his contract, was a damage to the defendant fully equal to the balance claimed for wages, the plaintiff can recover nothing.

It appears that during the time that the plaintiff was unable to do any labor, he applied to the defendant to be released from further laboring for him, assigning as a reason his poor health, and informing him that he wished to go to New York; and the defendant consented that, in case the plaintiff should remain unable to work, he might be released, and to pay him for the time he had labored his stipulated wages. It further appears that the plaintiff was not afterwards able to perform the amount of labor that his contract required, but that he continued to work for Eastman,

doing about two-thirds the amount of labor that his contract required, which was all that he was able to do. The defendant, finding him at work for Eastman, offered to accept, in fulfilment of the contract, as much labor as he was performing for Eastman.

The question now arises, what was the true understanding of the parties as to the conditions on which the defendant agreed that the plaintiff might be released from laboring further for him, and to pay him for what he had done his stipulated wages.

The defendant had no interest whatever in the plaintiff's alleged intention of going to New York, and cannot be supposed to have contemplated that as a cause or a condition of releasing him from his engagement, or to have looked upon it as having any bearing whatever upon the agreement, except as it may have operated upon the plaintiff as a motive for proposing it. That the plaintiff did not go to New York was, therefore, owing to a change of purpose on his part, in no way affecting the agreement. He was released upon the condition of his remaining unable to work. If by that was meant remaining as he then was, unable to do any work, the condition of the release failed, because he so far recovered as to be able to do two-thirds as much as he engaged in the original contract to do. But if the contingency or condition was his remaining unable to do as much as his contract required him to do; if the defendant agreed to release him from the contract, upon condition that he should remain unable to keep it, then, although he recovered in part from his sickness, and so far as to become able to have kept a contract requiring only two-thirds the amount of labor, the condition was complied with, and the release, of course, took effect.

Now, in view of the actual position of things, we think it would not be a fair and reasonable construction of the agreement, to suppose the parties intended it to take effect only on the condition that the plaintiff should remain una-

ble to do any thing.   A release on such conditions was not only superfluous in point of law, but could scarcely be supposed to have become the subject of any negotiation between persons of understanding.   If the health of the plaintiff was so hopeless as to lead either party to suppose it probable that he would not be able to do any work during the remainder of the term of service, either party would have considered it idle to talk about the performance of a contract requiring sound health.   The more rational supposition by far is, that the parties had in view a partial recovery, and a protracted state of partial disability, and a convalescence of uncertain duration ; and that their understanding was that if the health of the plaintiff should become restored, so far as to enable him to perform the labor he had contracted to perform, he should resume the discharge of the contract; but if he were to recover his health but partially, and not in a degree to do the work required by the contract, it was not the intention of the defendant to accept such undefined amount of labor in lieu of the whole to which he was entitled, nor was it the expectation of the plaintiff to receive the contract price for such partial performance as his doubtful health and partial convalescence might admit of.   Both must have contemplated that a partial recovery, admitting of no more than a partial performance on the part of the plaintiff, might afford ground for a new contract, but could not well admit of the continuance the old.

Our conclusion, therefore, is, that the parties agreed that the plaintiff should be released from the contract, upon the condition of his being unable to keep it ; and that condition appears by the report to have happened.   That agreement, when once made, could not, by either party, be rescinded. The plaintiff could not, on his part, return to his labor with strength inadequate to its performance, neither could the defendant, by insisting upon the performance of a part instead of the whole, restore the contract, which, by the con-

sent and agreement of both, had been abandoned. The contract, abandoned upon the condition of the plaintiff's being unable to keep it, was, upon the occurrence of that condition, absolutely abandoned, and, as to the part remaining unperformed, became as if it had never existed.

The result is that the plaintiff must recover the unpaid balance found by the auditor, being the sum due,.as well by the terms of the original contract as by the agreement at the time of the release.

*Judgment for the plaintiff.*